UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

GEORGE L. RIOSECO, individually and derivatively on
behalf of MANHATTAN PARTNERS II, L.P., and
S.W.A.N. PARTNERS, L.P., EVA RIOSECO and
NILDA CRUZ,

No._____

                                        Plaintiffs,

ECF Case

                    -against-

**NOTICE OF REMOVAL**

JOHN GABELLI, INC., ROBIN PREVER, INC.,
CAROL A. GABELLI, INC., DANIEL L. LOFRESE,
INC. and GAMCO ASSET MANAGEMENT, INC.,

'10 CIV 05871

                                        Defendants,

Jury Trial Demanded

                    -and-

MANHATTAN PARTNERS II, L.P., and S.W.A.N.
PARTNERS, L.P.,

                            Nominal Defendants.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/4/10

-------------------------------------------------------------------x

PLEASE TAKE NOTICE that pursuant to 28 U.S.C. Sec. 1331, 1441, and 1446, JOHN

GABELLI, INC., CAROL A. GABELLI, INC., DANIEL L. LOFRESE, INC., MANHATTAN

PARTNERS II, L.P., and S.W.A.N. PARTNERS, L.P., hereby submit this Notice of Removal,

and in support thereof state as follows:

### SUMMARY

1.      Within the last year, George L. Rioseco ("Rioseco"), along with his wife Eva Rioseco

and his sister-in-law Nilda Cruz (together the "Plaintiffs"), first filed, then amended, and then

voluntarily dismissed federal law claims in this Court (notwithstanding that Rioseco had already

filed virtually identical claims in a FINRA securities arbitration, which were ultimately dismissed on

the merits), only to turn around and again re-file these same virtually identical claims in state court

last month, but this time omitting the label of a federal claim.  These last actions amount to a transparent and ill-conceived attempt to avoid federal jurisdiction, and/or to engage in forum shopping based on a looming motion to dismiss in federal court.  However, as indicated below this Court continues to retain subject matter jurisdiction over this matter.

## BACKGROUND

2.  In or about December 2008, Rioseco filed the first of his claims in this matter before the Financial Industry Regulatory Authority ("FINRA").  In sum and substance, Rioseco – a sophisticated dentist and businessman, and a client of GAMCO Investors, Inc. and its subsidiaries for nearly a quarter century, during which time Rioseco received returns on his investments many times over, and earned millions of dollars in profits – accused GAMCO Investors, Inc. and related parties of mismanaging his assets (essentially claiming that his accounts should not have experienced a recent short-term decline with the rest of the markets despite reaping substantial returns over the previous 24 year period) and of somehow being responsible for losses due to Rioseco's own outside investment in limited partnerships which had invested indirectly with Bernie Madoff.

3.  In or about February 2010, this FINRA action culminated in a hearing before a FINRA arbitration panel, and resulted in the panel unanimously denying Rioseco's claims in their entirety, and ordering Rioseco to cover all of respondents' hearing fees.  *George L. Rioseco v. Gabelli & Company, Inc., GAMCO Investors, Inc., d/b/a Gabelli Asset Management Company, Inc., John Gabelli and Daniel L. Lofrese, Jr.*, FINRA Dispute Resolution, No. 08-04965 (March 2, 2010).

4.  In or about November 2009, while the FINRA arbitration was still pending, the Plaintiffs filed a complaint in this Court, in which they asserted essentially the same claims, based on the same facts and circumstances, as in the FINRA arbitration, and which also alleged a violation of

2

federal law (specifically, the Investment Advisers Act of 1940, the "IAA"). *See George L. Rioseco, et al, v. GAMCO Asset Management, Inc.*, No. 09 civ. 9396 (CS), document 1.

5.      On or about April 1, 2010, after the FINRA action had already been dismissed, the Plaintiffs filed an amended complaint in this Court, which again alleged a violation of federal law (again the IAA), and which also added a class action component. *See Id.*, document 11.

6.      By letter dated April 29, 2010, GAMCO Asset Management, Inc., the defendant in the then-pending federal action, requested a conference on its anticipated motion, explaining in substance why this action should be dismissed on res judicata or collateral estoppels grounds, and for failure to state a claim upon which relief may be granted. *See Id.*, document 13.

7.      The Court granted this request, and set a conference date for May 6, 2010.

8.      On or about May 3, 2010, before the conference could be held, the Plaintiffs dismissed the federal complaint pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, which amounted to a voluntary dismissal without prejudice. *See Id.*, document 14.

9.      On or about July 9, 2010, the Plaintiffs served on at least some named defendants yet another complaint, this time in New York State Supreme Court under Index No. 15862/10.[1] This action makes anew essentially the same claims, based on the same facts and circumstances, as in both the FINRA arbitration and the federal complaint referenced above, except that Rioseco removed the label of a federal law cause of action, added some named parties which are nonetheless related to parties from past filings in the other forums, and restyled the claims as a derivative case rather than as a class action. *See* state court complaint, attached as **Exhibit "A"**.

---

1    S.W.A.N. Partners, L.P., has not been served and otherwise retains all rights in that regard.

## BASIS FOR REMOVAL

10.     This Court has jurisdiction over this matter pursuant to the "artful pleading" doctrine. "The artful pleading doctrine, a corollary to the well-pleaded complaint rule, rests on the principle that a plaintiff may not defeat federal subject-matter jurisdiction by 'artfully pleading' his complaint as if it arises under state law where the plaintiff's suit is, in essence, based on federal law." *Sullivan v. American Airlines*, 424 F.3d 267, 271-272 (2d Cir., 2005).

11.     Furthermore, federal question jurisdiction exists not just where the complaint asserts a federal cause of action, but also presents state claims that "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 194 (2d Cir. 2005), *quoting Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).

12.     Pursuant to the "artful pleading" doctrine, it is clear that the allegations here are in essence based on federal law. GAMCO is obviously a registered investment advisor, and plainly the company's conduct is governed by the Investment Advisers Act. Furthermore, in that they filed a complaint not just once but *twice* (including the second time after they had already lost the FINRA arbitration) alleging a violation of the IAA, the Plaintiffs by their own pleadings necessarily concede that their allegations are based on a violation of federal law. Given this history of their own making, for the Plaintiffs to attempt to drop the IAA claim at this late date, they are engaging in the exact type of artful pleading that the doctrine means to prevent.

13.     In addition to the IAA claim raised initially, the new state complaint raises (as did the previous federal complaint for that matter) a "substantial federal question" by focusing on the

4

securities fraud aspect of the charges. While the Plaintiffs prefer to characterize the alleged misconduct as "common law" fraud, what is really at issue here is the federal statutory regime in place as it relates to securities fraud pursuant to Section 10(b) of the Securities Exchange Act of 1934.

14.     As such, this Court has jurisdiction over this action from the subject matter of a question of federal statute, rules and/or regulations.

15.     Venue is proper in this District, the District where the Plaintiffs reside, GAMCO maintains its principal place of business, other defendants conduct business, and the investments at issue was substantially performed, and many of the potential witnesses reside.

16.     This Court has supplemental jurisdiction over any remaining state court claims pursuant to 28 U.S.C. Sec. 1367.

## CONCLUSION

17.     For the reasons set forth above, removal of the action to this Court is proper under 28 U.S.C. Sec. 1331, 1441 and 1446.

18.     Pursuant to 28 U.S.C. Sec. 1446(b), this Notice of Removal is being filed within 30 days after the first defendant was served. As of this date, not all defendants may have been served.

19.     Pursuant to 28 U.S.C. Sec. 1446(a), the undersigned defendants represent that apart from the Summons and Complaint attached hereto as Exhibit "A", they have received no other process, pleadings, motions or orders in this action.

20.     Pursuant to 28 U.S.C. Sec. 1446(d), the undersigned defendants will promptly file a true and correct Notice with the Clerk of Court for the Supreme Court of the State of New York, County of Westchester, and serve Plaintiff's counsel with a copy of this Notice of Removal.

5

21.     For the foregoing reasons, this Court has jurisdiction over this matter.  The United

States District Court for the Southern District of New York is the federal judicial district embracing

the Supreme Court of New York, County of Westchester, where this action was most recently filed.

Accordingly, the action is properly removed from the Supreme Court of New York, County of

Westchester, to this Court.

Dated: Purchase, New York
        August 4, 2010

                                                    BY:  _____
                                                         Joseph A. Sack (JS-3758)
                                                         THE SACK LAW FIRM PLLC
                                                         *Attorneys for Defendants*
                                                         *JOHN GABELLI, INC., CAROL A.*
                                                         *GABELLI, INC., DANIEL L.*
                                                         *LOFRESE, INC., MANHATTAN*
                                                         *PARTNERS II, L.P., and S.W.A.N.*
                                                         *PARTNERS, L.P.*
                                                         2975 Westchester Avenue, Suite 415
                                                         Purchase, NY 10577
                                                         Telephone:    (914) 701-0806
                                                         Facsimile:    (914) 701-0808
                                                         E-Mail:  jsack@sacklawfirm.com

TO:
Peter St. Phillip, Esq.
Lowey Dannenberg Cohen & Hart, P.C.
*Attorneys for Plaintiffs*
White Plains Plaza
One North Broadway
White Plains, NY 10601-2310

Peter Goldstein, Esq.
Office of the General Counsel
GAMCO Asset Management, Inc.
One Corporate Center
Rye, NY 10580

Robin Prever, Inc.
1207 Aquila Loop
Celebration, FL 34747

6

Exhibit A

`

CLERK'S
INITIALS_____

**Westchester County Clerk**
**Application for INDEX NUMBER pursuant to**
**CPLR §8018**

**FEE: $210.00**

Spaces Below to be Typed or Printed by Applicant

Supreme
...........................COURT: WESTCHESTER COUNTY

☐ THIRD PARTY
ACTION

### TITLE OF ACTION OR PROCEEDING

GEORGE L. RIOSECO, individually and
derivatively on behalf of MANHATTAN
PARTNERS II, L.P., and S.W.A.N.
PARTNERS, L.P., EVA RIOSECO and
NILDA CRUZ

v.

JOHN GABELLI, INC., ROBIN PREVER, INC.,
CAROL GABELLI, INC., DANIEL LOFRESE, INC.
and GAMCO ASSET MANAGEMENT, INC.

TO BE COMPLETED BY APPLICANT

## TYPE OF ACTION- RECORDS RETENTION

☐ FORECLOSURE
☐ MATRIMONIAL
☐ GUARDIANSHIP
☐ NAME CHANGE

☐ CERTIORARI
☐ CONTRACT
☑ TORT
☐ OTHER

Peter D. St. Phillip, Jr.
Lowey Dannenberg Cohen & Hart, P.C.
One North Broadway, Suite 509
White Plains, NY 10601-2310

*Name and Address of Attorney for Plaintiff or Petitioner*

*Name and Address of Attorney for Defendant or Respondent*

*Name of Payor*
**DO NOT DETACH**

**RECEIPT**
Fee $210.00

Supreme
...........................COURT: WESTCHESTER COUNTY
**TITLE**

GEORGE L. RIOSECO, individually and derivatively on
behalf of MANHATTAN PARTNERS II, L.P. and S.W.A.N.
PARTNERS, L.P., EVA RIOSECO and NILDA CRUZ

v.

JOHN GABELLI, INC., ROBIN PREVER, INC., CAROL
GABELLI, INC., DANIEL LOFRESE, INC., and
GAMCO ASSET MANAGEMENT, INC.

☐ THIRD PARTY
ACTION

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---

GEORGE L. RIOSECO, individually and derivatively
on behalf of MANHATTAN PARTNERS II, L.P., and
S.W.A.N. PARTNERS, L.P., EVA RIOSECO and
NILDA CRUZ,

                     Plaintiffs,

                -v-

JOHN GABELLI, INC., ROBIN PREVER, INC.,
CAROL GABELLI, INC., DANIEL LOFRESE, INC.
and GAMCO ASSET MANAGEMENT, INC.,

                     Defendants,

              -and-

MANHATTAN PARTNERS II, L.P., and S.W.A.N.
PARTNERS, L.P.,

                     Nominal Defendants.

---

Index No.: 15862 /10
Date Purchased: 6|23|10

Plaintiff designates WESTCHESTER
county as the place of Trial. The
basis of the venue is: Plaintiffs' and
Defendants' residences are located in
Westchester County, New York.

**SUMMONS**



TO THE ABOVE-NAMED DEFENDANTS:

     YOU ARE HEREBY SUMMONED to answer the complaint in this action and to serve a
copy of your answer, or, if the complaint is not served with this summons, to serve a notice of
appearance, on the plaintiffs' attorneys within 20 days after service of this summons, exclusive
of the day of service (or within thirty (30) days after the service is complete if service is made by
any method other than personal delivery to you within the State of New York); and in case of
your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated: June 23, 2010

LOWEY DANNENBERG COHEN & HART, P.C.

By:

Peter D. St. Phillip, Jr.
Thomas M. Skelton
Scott V. Papp
One North Broadway, Suite 509
White Plains, New York 10601
Telephone:  (914) 997-0500
Facsimile:   (914) 997-0035

TO:    **ALL DEFENDANTS**
(ADDRESSES LISTED ON
ATTACHED SCHEDULE A)

## SCHEDULE A TO SUMMONS

John Gabelli, Inc.
c/o John D. Gabelli
73 Granite Springs Road
Granite Springs, NY  10527-0073


GAMCO Asset Management Inc.
Attn:  General Counsel
1 Corporate Center
Rye, NY 10580


Robin Prever, Inc.
1207 Aquila Loop
Celebration FL 34747


Carol A. Gabelli, Inc.
222 Purchase Street, Suite 300
Rye, NY  10580


Daniel L. Lofrese, Inc.
222 Purchase Street, Suite 300
Rye, NY  10580


Manhattan Partners II, L.P.
222 Purchase Street, Suite 300
Rye, NY  10580


S.W.A.N. Partners, L.P.
222 Purchase Street, Suite 300
Rye, NY  10580

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

---

GEORGE L. RIOSECO, individually and derivatively on
behalf of MANHATTAN PARTNERS II, L.P., and
S.W.A.N. PARTNERS, L.P., EVA RIOSECO and
NILDA CRUZ,

                     Plaintiffs,

        -v-

JOHN GABELLI, INC., ROBIN PREVER, INC.,
CAROL A. GABELLI, INC., DANIEL L. LOFRESE,
INC. and GAMCO ASSET MANAGEMENT, INC.,

                     Defendants,

        -and-

MANHATTAN PARTNERS II, L.P., and S.W.A.N.
PARTNERS, L.P.,

                     Nominal Defendants.

---

Index No.: 15362/10

**COMPLAINT**

**JURY TRIAL DEMANDED**



RECEIVED

JUN 23 2010

TIMOTHY C. IDONI
CO CLERK
COUNTY OF WESTR

---

    Plaintiffs, GEORGE RIOSECO, EVA RIOSECO and NILDA CRUZ, by an through their

undersigned attorneys, as and for their complaint against JOHN GABELLI, INC., ROBIN PREVER,

INC., CAROL A. GABELLI, INC., DANIEL L. LOFRESE, INC. and GAMCO ASSET

MANAGEMENT, INC., allege as follows:

## NATURE OF THE ACTION

    Plaintiffs, GEORGE RIOSECO, EVA RIOSECO and NILDA CRUZ, (collectively,

"Plaintiffs") bring this action against Defendant GAMCO Asset Management, Inc. ("GAMCO"), an

investment advisor registered with the United States Securities and Exchange Commission ("SEC").

Plaintiff George Rioseco also brings this action derivatively on behalf the nominal defendants, which are two investment funds he invested in – Manhattan Partners II, L.P. and S.W.A.N. Partners, L.P. (collectively, the "Feeder Funds") -- against their general partners, John Gabelli, Inc. ("John Gabelli"), Robin Prever, Inc., Carol A. Gabelli, Inc. and Daniel L. Lofrese, Inc. (collectively, the "General Partner Defendants" or the "Derivative Defendants"). In breach of their fiduciary duties to Plaintiffs, Defendant GAMCO and the Derivative Defendants placed Plaintiffs' investment accounts in highly risky securities in an effort to inflate their investment advisory fees without conducting even cursory due diligence on the investments. These Defendants also placed a substantial portion of the Feeder Funds' assets in vehicles ultimately managed by the fraudster Bernard L. Madoff, notwithstanding their suspicions that his returns were likely invented. The Plaintiffs bring this action individually to recover the significant losses they incurred in their investment portfolios as a result of the Defendants GAMCO's breach of fiduciary duty and other violations of law, and derivatively on behalf of the Feeder Funds to recover their investment losses incurred as a result of the Derivative Defendants' violations of the law.

## PARTIES

1.      Plaintiff, George L. Rioseco, ("Rioseco"), is a semi-retired dentist who, at all relevant times, has lived at 4 Pheasant Drive, Rye, New York 10580. Rioseco invested funds with Gabelli & Company ("Gabelli & Co.") directly and through his Individual Retirement Account. GAMCO advised Rioseco with respect to the investments of these funds.

2.      Plaintiff Eva Rioseco ("Eva") is the wife of Rioseco who, at all relevant times, has also lived at 4 Pleasant Drive, Rye, New York 10580. Eva invested funds directly with Gabelli & Co. and Defendant GAMCO advised Eva with respect to the investment of these funds.

3.      Plaintiff Nilda Cruz ("Cruz") is the sister of Rioseco who, at all relevant times, lived at 7-03 154th Street, Beechhurst, New York 11357.  Cruz invested funds directly with Gabelli & Co. and Defendant GAMCO advised Cruz with respect to the investment of these funds.

4.      Defendant GAMCO is a wholly owned subsidiary of GAMCO Investors, Inc. ("GAMCO Investors").  Defendant GAMCO is a New York investment advisory firm headquartered at One Corporate Center, Rye, New York 10580 which, at all relevant times, according to Defendant GAMCO, provided the investment advice to Plaintiffs with respect to their funds invested with Gabelli & Co.  Defendant GAMCO claims that it is not a member of the Financial Industry Regulatory Authority ("FINRA") and is, therefore, not subject to FINRA's jurisdiction for purposes of arbitration.

5.      Defendant John Gabelli, Inc. is one of two general partners of Manhattan Partners, L.P., a "feeder fund" that invested, through conduit funds, in Bernard Madoff's ponzi scheme.  John Gabelli, Inc. is a New York corporation which was formed with the purpose and intent solely to insulate its sole shareholder, John Gabelli, from liability associated with his management of Manhattan Partners.  John Gabelli, Inc. is a shell corporation with no assets or legitimate business purpose other than as an alter ego for John Gabelli.

6.      Defendant Robin Prever, Inc. is one of two general partners of Manhattan Partners, II, L.P.  Robin Prever, Inc. is a Florida corporation which was formed with the purpose and intent solely to insulate its sole shareholder, Robin Prever, from liability associated with her management of Manhattan Partners.  Robin Prever, Inc. is a shell corporation with no assets or legitimate business purpose other than as an alter ego for Robin Prever.

7.      Defendant Carol A. Gabelli, Inc. is one of two general partners of S.W.A.N. Partnership, L.P., a "feeder fund" that invested, through conduit funds, in Bernard Madoff's ponzi

scheme. Carol A. Gabelli, Inc. is a New York corporation which was formed with the purpose and intent solely to insulate its sole shareholder, Carol Gabelli, from liability associated with her mismanagement of S.W.A.N. Partnership, L.P. Carol A. Gabelli, Inc. is a shell corporation with no assets or legitimate business purpose other than as an alter ego for Carol Gabelli, an individual with no investment experience whatever.

8.      Defendant Daniel L. Lofrese, Inc. is one of two general partners of S.W.A.N. Partnership, L.P., a "feeder fund" that invested, through conduit funds, in Bernard Madoff's ponzi scheme. Daniel L. Lofrese, Inc. is a New York corporation which was formed with the purpose and intent solely to insulate its sole shareholder, John Gabelli, from liability associated with his mismanagement of S.W.A.N. Partnership. Daniel L. Lofrese, Inc. is a shell corporation with no assets or legitimate business purpose other than as an alter ego for Daniel Lofrese.

9.      Nominal Defendant S.W.A.N. Partnership, L.P. is a limited partnership organized and existing under the laws of the State of Delaware. Its principal place of business is located at 222 Purchase Street, Suite 300, Rye, NY 10580 in Westchester County, New York.

10.      Nominal Defendant Manhattan Partners II, L.P. is a limited partnership organized and existing under the laws of the State of Delaware. Its principal place of business is located at 222 Purchase Street, Suite 300, Rye, NY 10580 in Westchester County, New York.

## JURISDICTION & VENUE

11.      This Court has personal jurisdiction over each defendant pursuant to CPLR 301 and 302(a). Defendants either reside or transact business within the state of New York, have committed tortuous actions within the state of New York, and/or have committed tortuous actions outside the state of New York that have caused injury to person or property within New York.

12.     This action exceeds the jurisdictional minimum of this Court for purposes of satisfying subject matter jurisdiction.

13.     Venue is appropriate in Westchester County pursuant to CPLR §503(a) and (c), as all Plaintiffs reside in Westchester County and Defendant GAMCO maintains its principal office in Westchester County.   In addition, a substantial part of the events, misrepresentations, and omissions giving rise to the claims alleged herein occurred in Westchester County.

14.     The damages sustained directly by Plaintiffs and/or derivatively on behalf of the Feeder Funds are far in excess of the $75,000 monetary threshold required for assignment to the commercial division in Westchester County pursuant to 22 NYCRR 202.70(a).

## FACTUAL BACKGROUND

## ENTITIES AFFILIATED WITH DEFENDANT GAMCO

15.     Gabelli & Co. is a wholly owned subsidiary of GAMCO Investors.  Gabelli & Co. is a New York brokerage firm headquartered at One Corporate Center, Rye, New York 10580 which, at all relevant times, managed Plaintiffs' accounts.  Gabelli & Co. was Plaintiffs' brokerage firm at all relevant times.

16.     GAMCO Investors is a publicly traded holding company headquartered at One Corporate Center, Rye, New York 10580.  At all relevant times, GAMCO Investors has been a majority shareholder in Gabelli Securities, Inc., which, in turn, has been a majority shareholder of Gabelli & Co.  GAMCO Investors, through its majority ownership of Gabelli Securities, Inc., directs the management and policies of Gabelli & Co.

17.     John Gabelli ("Gabelli") is currently and has been since 1981 employed as a Senior Vice President of GAMCO.

18. Daniel L. Lofrese, Jr. ("Lofrese") is currently and has been since 2000 an employee of Gabelli & Co. Lofrese is a securities broker.

19. In or about October 1984, Rioseco invested approximately $76,000 with Gabelli & Co. Gabelli was assigned to manage Rioseco's accounts.

20. At or about the same time, Eva invested money with Gabelli & Co. Gabelli was assigned to manage Eva's accounts.

21. In or about 1999, Cruz invested approximately $300,000 with Gabelli & Co. Gabelli was assigned to manage Cruz's accounts. At no time prior to Cruz's initial investment, nor indeed at any time thereafter, did any representative of Defendant GAMCO discuss Cruz's financial situation or risk tolerance with her.

22. In or about December 1996 and July 2000, Rioseco executed revised Investment Advisory Agreements with Defendant GAMCO. Copies of these documents are annexed hereto as Exhibits "A" and "B." Both of these agreements provided Defendant GAMCO with "complete and sole investment discretion and authority to manage" Rioseco's investment accounts. Defendant GAMCO identified itself in the 2000 agreement as "doing business under Gamco Asset Management Company, Inc."

23. In or about July 2000, Eva executed a Revised Investment Advisory Agreement with Defendant GAMCO. This agreement provided Defendant GAMCO with "complete and sole investment discretion and authority to manage" Eva's investment account. Defendant GAMCO identified itself in the 2000 agreement as "during business under GAMCO Asset Management Company, Inc."

24.     On information and belief, Nilda Cruz executed an investment advisory agreement with Defendant GAMCO which provided Defendant GAMCO with complete and sole investment discretion and authority to manage her accounts.

25.     From 1984 to December of 2008, Rioseco continuously maintained investment accounts at Defendant GAMCO and Gabelli & Co. which were overseen by Gabelli, including an Individual Retirement Account.  Over the years from 1984 until 2008, Rioseco grew to trust Gabelli's investment advice.  Eva and Cruz also maintained their individual investment accounts at Defendant GAMCO and Gabelli & Co which were overseen by Gabelli.  Defendant GAMCO handled Rioseco's accounts on a fully discretionary basis and, as such, owed Plaintiffs fiduciary duties of utmost good faith, fair dealing, loyalty and candor.  The July 7, 2000 Investment Advisory Agreement for the accounts state:

> GAMCO Authority.  GAMCO shall have complete and sole investment discretion and authority to manage the Account to the full extent permitted by law, including the purchase and sale of any securities, the weighting of investment positions within the portfolio, industry representation within the portfolio, the exercise of any and all voting rights pertaining to any securities held in the Account, and other relevant day to day investment decisions.

The agreements also provided that "GAMCO will establish a brokerage account through Gabelli & Co., Inc. ("Gabelli and Company") with its clearing broker."

26.     By virtue of their corporate structure and relationships, and their course of conduct over the years, Defendant GAMCO exercised complete investment discretion and authority over Plaintiffs' accounts.  As such, Defendant GAMCO and the FINRA Arbitration Respondents were charged with fiduciary duties of utmost good faith, fair dealing, candor and loyalty to Plaintiffs.

## Summary of the Claims

27.     Plaintiffs have been long time customers of Defendant GAMCO.  Over the period 2002-2008, and with increasing frequency in 2008, Rioseco had sought financial advice and guidance from Defendant GAMCO as to how to position Plaintiffs' accounts more conservatively, in light of Plaintiffs' advancing age and that concomitant inability to earn substantial income in the future.  Defendant GAMCO failed to heed Plaintiffs' repeated, and increasing, concerns, failed to invest Plaintiffs' accounts more conservatively, failed to safeguard Plaintiffs' assets, and failed to satisfy their ongoing suitability, fiduciary and other obligations to Plaintiffs.  As a result, Plaintiffs have been substantially damaged.  GAMCO and the General Partner Defendants also provided Plaintiffs and all of its investment advisory clients that invested in limited partnerships, which were ultimately managed by Bernard Madoff, with false and misleading information about the nature of their investments and the amount of due diligence it had conducted in connection with these investments.  As a result, Plaintiffs seek damages and return of all fees Defendants charged them under their investment advisory contracts.  Further, Plaintiff Rioseco, as derivative Plaintiff on behalf of the Feeder Funds, seeks damages and return of all fees Defendants charged to the Feeder Funds under their investment advisory contracts and partnership agreements.

## The Manhattan Partners Investment

28.     In or about 2002 (and numerous times thereafter), Rioseco advised Gabelli that, given Rioseco's advancing age, it was important to place more of his investment portfolio in safer investment vehicles.  Rioseco met with Gabelli at Gabelli's offices in Rye, New York to discuss how Rioseco's increasingly conservative investment objectives could be met.  At the meeting, Gabelli advised Rioseco that he should place a substantial portion of his retirement assets in a private investment fund which was organized as a limited partnership.  During the meeting, Gabelli stated

that the limited partnership was a very safe investment and Rioseco should not expect to make the same type of return he was used to making in his regular account. Gabelli also explained that the asset manager was ultimately Bernard Madoff ("Madoff") but that the money would go through a conduit (*i.e.*, Manhattan Partners II, L.P. ("Manhattan Partners")) before it reached Madoff. Gabelli explained that Madoff's trading strategy was safe and conservative because he did not maintain any positions at the end of the month; rather, he liquidated all of his assets and kept money in cash. Gabelli did not provide any further specifics on Madoff's trading strategy. Rioseco initially declined to invest in Manhattan Partners, but Defendant GAMCO did not provide Rioseco with any other conservative recommendations, so Rioseco ultimately agreed to the investment.

29.     Based on the advice of Gabelli, Rioseco invested over $1 million, representing a substantial portion of his retirement assets, in Class B shares of Manhattan Partners.

30.     Gabelli and Robin Prever controlled the two General Partners of Manhattan Partners through two corporations, John Gabelli, Inc., a New York corporation, and Robin Prever, Inc., a Florida corporation. Gabelli and Prever were the only shareholders of John Gabelli, Inc. and Robin Prever, Inc., respectively. These corporations were established for the sole purpose of attempting to limit the personal liability of Gabelli and Prever and are nothing more than shell corporations that conduct no real business.

31.     The Manhattan Partners offering materials described that the Class B shares "will be invested with one of Manhattan Partner's investment managers." It also stated that "[t]he Class B shares are invested with a market neutral manager whose 10-year annual compounded rate of return is over 15%. Furthermore, the manager has never had a down quarter or down year." These statements were materially misleading and were based on no diligence whatsoever. John Gabelli only spoke with Bernard Madoff once to ask if he could invest with him directly and Mr. Madoff

told him that his fund was not accepting any additional direct investments.  Neither John Gabelli nor

any other representative of GAMCO ever had access to any of Mr. Madoff's trading operations.

Neither John Gabelli nor anyone else at GAMCO ever did any due diligence whatsoever of Mr.

Madoff's investments.

   32. In or about September 2006, John Gabelli was told by his assistant Daniel Lofrese

that <u>Barron's</u> had reported in May 2001 that:

> ...some on Wall Street remain skeptical about how Madoff achieves
> such stunning double-digit returns using options alone.  The recent
> MAR Hedge report, for example, cited more than a dozen hedge fund
> professionals, including current and former Madoff traders, who
> questioned why no one had been able to duplicate Madoff's returns
> using this strategy.  Likewise, three option strategists at major
> investment banks told Barron's they couldn't understand how Madoff
> churns out such numbers.  Adds a former Madoff investor: "Anyone
> who's a seasoned hedge-fund investor knows the split-strike
> conversion is not the whole story.  To take it at face value is a bit
> naive."

   33. John Gabelli himself was sufficiently worried by this skepticism to call Joseph

Soares, Manhattan Partners' account manager at Maxam Capital, the fund in which Manhattan

Partners invested its money which was then invested into Bernard Madoff's firm.  After having this

one conversation with Mr. Soares, John Gabelli was satisfied that Manhattan Partners' investment

with Mr. Madoff's firm was secure, simply on the word of another individual who had no access to

Mr. Madoff's operations. John Gabelli, however, took no steps to inform his asset management

clients whose funds were invested with Mr. Madoff of (1) the <u>Barron's</u> article; (2) the conversation

that he had with Mr. Soares; or (3) the lack of due diligence he conducted of Mr. Madoff's

operations.  This lack of disclosure violated the fiduciary duty imposed upon general partners and

investment advisors – both roles Mr. Gabelli was playing as an employee of GAMCO and a general

partner of Manhattan Partners, II, L.P. – which requires an affirmative obligation of utmost good faith and full and fair disclosure of all material facts to an investment adviser's clients.

## The S.W.A.N. Partners, L.P. Investment

34.     In or about January, 2008, in light of Rioseco's continued and ongoing concern over placing his assets in more conservative investment vehicles, which he repeatedly expressed to Defendant GAMCO, Gabelli advised Rioseco to invest in S.W.A.N. Partners, L.P. ("S.W.A.N."). "S.W.A.N." was an acronym for "Sleep Well At Night." SWAN is a New York limited partnership. The two general partners, Daniel L. Lofrese, Inc. and Carol A. Gabelli, Inc., are New York corporations controlled by their namesakes, who are both employees of Gabelli & Co. Lofrese and Carol Gabelli were the only shareholders, officers and directors of Daniel L. Lofrese, Inc. and Carol A. Gabelli, Inc., respectively. These corporations were established for the sole purpose of attempting to limit the personal liability of Mr. Lofrese and Mrs. Gabelli and are nothing more than shell corporations that conduct no real business. Carol Gabelli, Gabelli's wife, had and has no investment experience whatsoever and was entirely unqualified to manage S.W.A.N.

35.     On or about January 28, 2008, on Gabelli's advice, Rioseco invested $200,000 of the assets in his retirement account in S.W.A.N.

36.     Gabelli also explained that the asset manager was ultimately Bernard Madoff, as with Manhattan Partners, but that the money would go through a conduit (S.W.A.N.) before it reached him. Gabelli reiterated that Madoff's trading strategy was safe.

37.     The S.W.A.N. partnership's objective was to:  "Generate an above-average annual rate of return on invested capital, primarily through capital appreciation.  Current income will be a secondary objective."

## Omissions and Misrepresentations Regarding
## Risks Inherent in Plaintiffs' Accounts

38.     Defendant GAMCO never informed Rioseco of the inherent riskiness of concentrating such a large percentage of retirement assets with a single investment manager (Madoff).  Moreover, Defendant GAMCO abdicated its fiduciary responsibilities by allowing Madoff to exercise complete and unfettered discretionary authority over a substantial portion of Rioseco's retirement funds, without conducting adequate and appropriate due diligence into Madoff's investment strategy or the returns he claimed to provide.  Defendant GAMCO recklessly, with gross negligence, and in breach of its fiduciary obligations to Rioseco, caused a substantial portion of Plaintiff's retirement assets to be handed over to Madoff to be "invested" for the benefit of Rioseco.  Rioseco's accounts have been decimated as a direct result of Defendant GAMCO's abdication of their obligations to Rioseco, and the failure of Defendants to investigate numerous red flags indicating extreme risk to Rioseco from concentrating investment exposure in Madoff for a substantial portion of Rioseco's assets.

39.     Given Rioseco's age, his repeatedly expressed desire to place his retirement assets in safer investments, and his decreased ability to earn substantial income going forward, Defendant GAMCO had an affirmative obligation to ensure that Rioseco's account was properly invested, to keep informed regarding changes in the market, and to act to protect Rioseco's interests.  Moreover, given Rioseco's personal and financial situation and lack of experience investing in alternative investments, the Manhattan Partners and S.W.A.N. investments were unsuitable, as was the heavy concentration of the remainder of Rioseco's assets in equities, which exposed him to substantial market risk.

40.     Defendant GAMCO abrogated its fiduciary responsibilities to Rioseco by ceding to Madoff unfettered discretionary authority over Rioseco's account and allowing complete and

unfettered custody of Rioseco's funds to Madoff, with no specific oversight over Madoff or the manner in which he invested funds placed under his control.

41.     Defendant GAMCO never informed Rioseco of the inherent riskiness of concentrating such a large percentage of retirement assets with a single manager, including the risk that in the event of a regulatory or other legal problems at Madoff's firms, Rioseco could lose a substantial portion of his retirement assets.

42.     During the period from November 2007 through October 2008, Rioseco repeatedly expressed his growing concern over the state of his investment portfolio to Defendant GAMCO, seeking its advice as to how to more conservatively invest his assets. At times, Defendant GAMCO simply failed to heed Rioseco's concerns. At other times, Defendant GAMCO failed to return Rioseco's telephone calls and, on at least one occasion, Gabelli failed to show up for a scheduled meeting. During the same period, the securities markets experienced severe volatility and declines. Yet, notwithstanding these market-wide issues, including the demise of Lehman Brothers, Bear Stearns, and many other firms, the widely-reported issues with AIG and other financial services firms, the federal bailout and growing unease in the economy and the capital markets, Defendant GAMCO failed to satisfy their ongoing suitability and other obligations to Rioseco, by failing to safeguard his assets. The Manhattan Partners and S.W.A.N. Partners investments were unsuitable when made, and they became more and more unsuitable as time passed, while Rioseco grew older, his ability to earn substantial income in his dental practice decreased, and the capital markets grew more and more volatile and unstable. Moreover, the overconcentration of Rioseco's assets in equities was blatantly unsuitable, given Rioseco's expressed desire to place his account in a more conservative posture.

## The Bernard Madoff Scandal

43.     On December 10, 2008, Madoff reportedly informed certain senior employees at his investment firm Bernard L. Madoff Investment Securities, LLC ("BMIS") that his investment advisory business was a fraud.  Madoff reportedly stated that he was "finished," that he had "absolutely nothing," that "it's all just one big lie," and that it was "basically, a giant Ponzi scheme." Madoff reportedly communicated to the senior employees that he had for years been paying returns to certain investors out of the principal received from other, different, investors.  Madoff reportedly stated that the business was insolvent, and that it had been for years.  Madoff also reportedly stated that he estimated the losses from this fraud to be approximately $50 billion.

44.     On December 11, 2008, the SEC charged Madoff and BMIS with securities fraud for a multi-billion dollar Ponzi scheme that Madoff and others perpetrated on advisory clients of BMIS. Also on December 11, 2008, Madoff and BMIS were criminally charged by the United States Attorney's Office of the Southern District of New York with securities fraud.  According to the SEC's complaint and the U.S. Attorney's criminal complaint, since at least 2005, Madoff and BMIS have been conducting a Ponzi-scheme through the investment adviser services of BMIS.  The United States District Court for the Southern District of New York has appointed a receiver to oversee his firm BMIS.

45.     In the wake of this debacle, Rioseco contacted Gabelli concerning whether his limited partnership interests were presently invested in funds managed by Madoff.  Respondent Gabelli again acknowledged during these conversations that Rioseco's Manhattan Partners and S.W.A.N. Partners' assets were invested, through feeder vehicles, in funds managed by Madoff.  As a result, Rioseco reasonably believes that his investments in Manhattan Partners and S.W.A.N. Partners have been severely damaged, if not wiped out entirely.

46.     The recommendation to continue to concentrate such a large percentage of assets with Madoff is particularly egregious, given the number of growing red flags in the marketplace regarding Madoff and his investment strategy in recent years. Indeed, many sophisticated fund managers refused to invest their clients' funds with Madoff because they, unlike Defendant GAMCO, conducted adequate due diligence into Madoff and his firm.

47.     On December 18, 2008, *The Wall Street Journal* reported that certain investment firms throughout Wall Street were convinced as early as 2005 that Madoff's firm was a fraud, even going so far as to call it a ponzi scheme. In a letter dated November 7, 2005 from Harry Markopolos to the Securities and Exchange Commission, the SEC was advised of the suspicions of Markopolos (and others on Wall Street) that Madoff was a fraud. This letter stated:

> I am the original source of the information presented herein having first presented my rationale, both verbally and in writing, to the SEC's Boston office in May, 1999 before any public information doubting Madoff Investment Securities, LLC appeared in the press. There was no whistleblower or insider involved in compiling this report. I used the Mosaic Theory to assemble my set of observations. My observations were collected first-hand by listening to fund of fund investors talk about their investments in a hedge fund run by Madoff Investment Securities, LLC, a SEC registered firm. I have also spoken to the heads of various Wall Street equity derivative trading desks and every single one of the senior managers I spoke with told me that Bernie Madoff was a fraud.

> *       *       *

> I have outlined a detailed set of Red Flags that made me very suspicious that Bernie Madoff's returns aren't real and, if they are real, then they would almost certainly have to be generated by front-running customer order flow from the broker-dealer arm of Madoff Investment Securities, LLC.

> *       *       *

> Scenario #2 (**Highly likely**) Madoff Securities is the world's largest Ponzi Scheme. In this case there is no SEC reward payment due the whistle-blower so basically I'm turning this case in because it's the