74. Defendant GAMCO abdicated responsibility of the management of a substantial portion of Rioseco's assets to Madoff, and recklessly, with gross negligence and in breach of their fiduciary obligations, failed to perform or cause to be performed appropriate due diligence that would have revealed material irregularities in the investments, operations and financial reporting of Madoff and his firms.

75. Defendant GAMCO either knew of or recklessly disregarded: (a) the very high concentration of Rioseco's investments in a single third party investment manager, and the materially heightened risk to Rioseco's assets from such reliance on Madoff, particularly given the lack of transparency of Madoff's operations; (b) the abnormally high and stable positive investment results reportedly obtained by Madoff; (c) the inconsistency between BMIS's publicly available financial information concerning its assets and the purported amounts that Madoff managed for clients; and (d) the fact that BMIS itself was audited by a small, obscure accounting firm, Friehling & Horowitz, which has its offices in Rockland County New York and had no experience auditing entities of the apparent size and complexity of BMIS.

## GAMCO's Misstatements, Deceit and Material Omissions

76. Plaintiffs' asset management agreements with GAMCO further provided that "GAMCO will attempt to resolve any conflicts of interest by exercising the good faith required of fiduciaries, and GAMCO believes that it will be able to resolve conflicts on an equitable basis." This statement was false and materially misleading. John Gabelli, his wife, Carol Gabelli, and Daniel Lofrese had personal financial interests in placing Plaintiffs funds in the Manhattan Partners' and S.W.A.N. limited partnerships. Their interest in obtaining monies by serving as general partners of these partnerships conflicted with their duties as fiduciaries to Plaintiffs. Notwithstanding its contractual pledge, GAMCO made no effort whatsoever to resolve these conflicts by exercising the

good faith required of fiduciaries. Instead of placing the interests of Plaintiffs' interests ahead of the financial interest of their employees, GAMCO failed to exercise any good faith by failing to conduct any diligence of BMIS, failing to investigate the nature of the investments and failing to even know where the assets were custodied.

77. Plaintiffs' asset management agreements with GAMCO also stated that "GAMCO normally holds on behalf of its clients positions of more than 5% of the equity securities of several issuers." With respect to the limited partnership funds ultimately managed by BMIS, this statement was materially misleading and omitted information concerning the true nature of the investments BMIS supposedly held.

78. With respect to Plaintiffs' investments in the Manhattan Partners limited partnerships, John Gabelli, Inc., GAMCO and Robin Prever, Inc. provided Plaintiffs' investment materials including a document entitled "Manhattan Partners I, L.P. Class B - Brief Summary of the Offering Memorandum." This document was rife with misstatements. For example, this document explains that "Manhattan Partners Class B investors will be invested with one of Manhattan Partner's investment managers. This manager utilizes a relatively market neutral approach." This manager was BMIS. BMIS did not use a market neutral approach and GAMCO had no basis in fact to state that he did as it had done no due diligence of BMIS' operations.

79. Further untruths included statements concerning the investment philosophy of the Class B shares. The Summary document stated that:

> The **Class B** manager seeks to obtain capital appreciation by utilizing a nontraditional options trading strategy which can be described as a "split strike synthetic conversion" strategy. . . . A proprietary computer system continually optimizes this small basket of stocks to replicate and enhance the performance of the S&P 100 at low cost. . . . Under normal circumstances the manager is fully hedged using options that represent an amount equal to the aggregate value of the underlying long securities.

John Gabelli, the John Gabelli, Inc. and GAMCO employee who advised Plaintiffs to invest in Manhattan Partners, had no basis at all for any of these statements. The statements materially mislead Plaintiffs into believing that BMIS had a legitimate capital appreciation strategy, a computer system that enhances the portfolio and a risk reduction strategy. GAMCO and John Gabelli, Inc. negligently failed to investigate whether any of these statements were, in fact, true. No GAMCO or John Gabelli, Inc. employee ever had access to any information which would have been necessary to test the accuracy of the statements made in this offering memorandum.

### Other Improprieties

80.    Defendants further failed to discharge their continuing and ongoing duties to ensure that Plaintiffs' investments were appropriate and suitable. For example, from the period of December 31, 2007 until October 31, 2008, Rioseco's retirement account value (excluding his investments in Manhattan Partners and S.W.A.N. Partners) diminished from more than $3.8 million to less than $2.2 million, or approximately 43%. Further, during the same period, Eva's investment portfolio diminished from more than $770,000 to less than $372,000, after netting at $145,000 in distributions, Eva's portfolio declined approximately 41%. Cruz, an elderly widower, received approximately $325,000 from her husband's estate in 1999. Since the end of 2007, she has lost a significant amount of that money in investments that, upon information and belief, were almost entirely weighted in risky equity investments.

81.    Given the serious adverse market conditions present in late 2007 and into 2008, a prudent investment advisor would have reduced the risks in Plaintiffs' portfolios. In the face of such conditions, Defendant GAMCO failed to take reasonable steps to protect Plaintiffs against the adverse consequences of the market downturn. For example, as of December 31, 2007, Defendant GAMCO advised Rioseco to invest his retirement assets in $3,014,367.09 of stocks (98.78% of the

non-limited partnership investments in the account) and only $37,062.50 of fixed income vehicles (1.21% of the non-limited partnership investments in the account). As the market continued to deteriorate in 2008, this ratio became even worse. As of May 31, 2008, Defendant GAMCO advised Rioseco to invest his retirement assets in $3,090,430.66 of stocks (98.95% of the non-limited partnership investments in the account) and only $32,875 (1.05% of the non-limited partnership investments in the account) of fixed income instruments. As a result, Rioseco remained exposed to substantial market risk, despite repeatedly expressing to Defendant GAMCO his growing concerns about risk and his desire to have his assets invested more conservatively.

82. Defendant GAMCO also failed to properly protect and safeguard Rioseco's non-retirement investment account. As of January 31, 2008, Defendant GAMCO had 96.6% of Defendant GAMCO investment account invested in stocks and 3.34% in cash. Defendant GAMCO failed to take steps to protect these assets while the markets continued to decline in 2008. As of August 31, 2008, Defendants had 96.79% of Rioseco's total assets in stocks and 3.21% in cash.

83. During the period December 31, 2007 until at least October 1, 2008, Defendant GAMCO invested Plaintiffs' accounts heavily in stocks with almost no weighting in safer investments such as bonds, low-yield CDs or money market funds. Not only should Defendant GAMCO have known that Rioseco, at age 72, his wife Eva, age 74, and his sister, Cruz, a 62-year old widow with little earning power and limited assets, should have been invested in less risky instruments, Defendant GAMCO was on specific notice that Rioseco and Eva wanted to begin to cycle out of equities into more conservative investments, given the repeated concerns Rioseco expressed over his and his wife's portfolio, beginning in 2002, and escalating substantially in late 2007 into 2008.

84. In January 2009, after receiving her statement, Cruz called Lofrese to ask why her account had lost so much money. After Cruz reminded him, in tears, that her inheritance was necessary to supplement her living expenses, she asked him what she should do about the precipitous losses in her accounts. Lofrese, in a stunning recognition of his lack of regard for his fiduciary responsibilities, told her to get a financial advisor.

85. As a direct consequence of Defendant GAMCO's failure to invest Plaintiffs' assets in suitable investments, Plaintiffs incurred substantial losses.

### PLAINTIFF GEORGE RIOSECO'S DERIVATIVE ALLEGATIONS

86. Derivative Plaintiff George Rioseco (the "Derivative Plaintiff") also brings this action derivatively in the right and for the benefit of the Feeder Funds (Manhattan Partners II, L.P. and S.W.A.N. Partners, L.P.) against the Derivative Defendants seeking redress for the injuries suffered by the Feeder Funds as a direct result of the breach of fiduciary duties, abuse of control, gross mismanagement, negligence, and fraud alleged herein.

87. Derivative Plaintiff will adequately and fairly and adequately represent the interests of the Feeder Funds - Manhattan Partners II, L.P. and S.W.A.N. Partners, L.P. - and its Limited Partners in enforcing and prosecuting its rights.

88. Derivative Plaintiff was a Limited Partner in the Feeder Funds at all times relevant to Derivative Defendants' wrongful course of conduct alleged herein.

89. The action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

90. John Gabelli, Inc., as one of the General Partners of Manhattan Partners owes a fiduciary duty to Manhattan Partners and its limited partners.

91. Robin Prever, Inc., as one of the General Partners of Manhattan Partners owes a fiduciary duty to Manhattan Partners and its limited partners.

92. Daniel L. Lofrese, Inc., as one of the General Partners of S.W.A.N. Partners owes a fiduciary duty to S.W.A.N. Partners and its limited partners.

93. Carol Gabelli, Inc., as one of the General Partners of S.W.A.N. Partners owes a fiduciary duty to S.W.A.N. Partners and its limited partners.

## DERIVATIVE STANDING

94. With respect to the derivative claims asserted herein, Derivative Plaintiff has standing to bring the derivative claims on behalf of the Feeder Funds – Manhattan Partners II, L.P. and S.W.A.N. Partners, L.P. and was an investor at the time the Derivative Defendants committed the acts complained of herein, as well as at the time this suit was commenced.

95. Derivative Plaintiff's investment in Manhattan Partners II, L.P. and S.W.A.N. Partners, L.P. had a fair value in excess of $1,000,000.

96. Derivative Plaintiff is not required to give security for Manhattan Partners II, L.P. and/or S.W.A.N. Partners, L.P.'s expenses.

## DEMAND FUTILITY

97. Derivative Plaintiff has not made any demand upon the General Partners of Manhattan Partners II, L.P. or S.W.A.N. Partners, L.P.'s to bring an action on behalf of the Feeder Funds with respect to the claims asserted herein to recover damages for the injuries suffered by the Feeder Funds, since such demand would have been futile.

98. Demand is excused as futile because:

    (a) the unlawful acts and practices alleged herein cannot be defended by the Derivative Defendants, and are not subject to the protection of any independent business judgment since it would undoubtedly

be to the benefit of the Feeder Funds to recover the damages caused by the Derivative Defendants' wrongdoing and to assert these derivative claims.

(b) the wrongs alleged herein constitute violations of the fiduciary and contractual duties owed by the Derivative Defendants to the Feeder Funds. The Derivative Defendants are subject to liability for breaching their fiduciary and contractual duties to the Feeder Funds, *inter alia*, causing the Feeder Funds' assets to be invested with Madoff or Madoff-related entities without any oversight or supervision, causing or permitting the reckless investing practices alleged herein, failing to adequately monitor the investment vehicles in which it placed the Feeder Funds' assets, and failing to detect, prevent, or halt the misstatements and omissions of material fact alleged herein.

(c) the Derivative Defendants exercised ultimate authority over the Feeder Funds and profited and continued to profit at the expense of the Feeder Funds by receiving management and administrative fees and other fees from the Feeder Funds while in possession of information that would have disclosed that Madoff's operations were not legitimate.

(d) the Derivative Defendants face substantial liability in this action because of their acts and omissions alleged herein. The Derivative Defendants face substantial exposure to liability for abrogation of their duty of oversight. The Derivative Defendants either knew or should have known that the Feeder Funds' assets were actually part of a massive Ponzi scheme, or otherwise generated purported results that would have been impossible to achieve under Madoff's alleged investment strategy, and took no steps in a good faith effort to prevent or remedy that situation, proximately causing millions of dollars of losses.

(e) the Derivative Defendants have committed the egregious actions outlined herein, and the Derivative Defendants cannot be expected to prosecute claims against themselves and persons or entities with whom they have extensive inter-related business, professional and personal, including familial, entanglements, if Plaintiffs demanded that they do so. The Derivative Defendants, because of these relationships, have debilitating conflicts of interest that prevent them from taking the necessary and proper action on behalf of the Feeder Funds.

(f) the Derivative Defendants participated in, approved, or permitted the wrongs alleged herein, concealed or disguised those wrongs, or recklessly or negligently disregarded them, and therefore they are

  not disinterested parties and lack sufficient independence to exercise business judgment as alleged herein.

(g)  the Derivative Defendants, because of their inter-related business, professional and personal relationships, have developed debilitating conflicts of interest that prevent them from taking the necessary and proper action on behalf of the Feeder Funds as requested herein;

(h)  the Derivative Defendants exhibited a sustained and systemic failure to fulfill their fiduciary and contractual duties, which could not have been an exercise of good faith business judgment and amounted to gross negligence and extreme recklessness;

(i)  the Derivative Defendants would be forced to sue themselves and persons with whom have extensive business and personal entanglements, which it will not do, thereby excusing demand;

(j)  the acts complained of constitute violations of the fiduciary and contractual duties owed by the Derivative Defendants and these acts are incapable of ratification;

(k)  the Feeder Funds have been exposed to significant losses due to the wrongdoing complained of herein, yet the Derivative Defendants have not filed any lawsuits against themselves, or others who were responsible for that wrongful conduct to attempt to recover for the Feeder Funds any part of the damages the Feeder Funds have suffered; and

(l)  the Derivative Defendants lack sufficient independence to make a disinterested decision on whether to pursue the derivative claims alleged herein against Derivative Defendants.

99.  New York courts have excused demand where shareholders of Bernie Madoff "feeder funds" have sued derivatively on behalf of their company alleging nearly identical claims. *See, e.g., Sacher v. Beacon Assocs. Mgmt. Corp.*, 2010 WL 1881951, at *8 (Sup. Ct. Nassau County, Apr. 26, 2010).

{2270 / CMP / 00102406.DOC v5}         41

## DIRECT CAUSES OF ACTION

### Count I -- Breach of Fiduciary Duty

100.   Plaintiffs repeat and reallege the allegations contained in each and every preceding paragraph as if fully set forth herein.

101.   By virtue of their discretionary authority over Plaintiffs' accounts, Defendant GAMCO owes continuing fiduciary duties of care, loyalty, candor and good faith directly to Plaintiffs. Defendant GAMCO has breached those fiduciary duties in the manner set forth herein.

102.   Defendant GAMCO intentionally or acting with gross negligence and recklessness, and contrary to industry customs, practices and standards, failed to comply with their fiduciary duties by:

   (a)   failing to conduct adequate due diligence into the sub-advisor handling Plaintiffs' assets;

   (b)   failing to uncover and/or alert Plaintiffs to the numerous red flags which Defendant GAMCO should have discovered about the sub-advisor handling Plaintiffs' assets;

   (c)   failing to protect and safeguard Plaintiffs' assets by allowing the funds to be custodied with Madoff, despite the clear conflicts of interest involved in that arrangement;

   (d)   failing to protect and safeguard Plaintiffs' funds by allowing the funds to be over-exposed to declines in the market and failing to place the accounts in a defensive posture even after Rioseco expressed his continued uneasiness over the markets in 2007 and 2008;

   (e)   trading Plaintiffs' accounts in total disregard of his investment objectives, financial limitations, and his specific authorizations and instructions, and misrepresentations or omissions relating thereto; and

   (f)   initiating an overall strategy without reasonable grounds to expect achievement of Plaintiffs' investment objectives and by failing to reveal the risks inherent in

    (4) such other information used or considered to be reasonable by such member or registered representative in making recommendations to the customer

107. Defendant GAMCO invested Plaintiffs' assets in unsuitable investment vehicles, failed to conduct adequate due diligence on the sub-advisor, Madoff, and failed to protect and safeguard the portfolio from the possibility of severe market declines. This Rule prohibits brokers from making investment recommendations that are unsuitable to their clients' investment objectives, financial situation and risk tolerance. In determining suitability, the broker should not only investigate the individual securities recommended in light of the client's investment experience, level of sophistication, investment objectives, financial situation, and tolerance for risk, but should also take into account the overall trading strategy employed by the broker in the handling of the account in light of these considerations as well.

108. Moreover, suitability is an ongoing and continuing obligation of the broker, and as a client's situation and risk tolerance changes over time, the broker is obligated to constantly review the suitability of a customer's investments, and to take affirmative steps to respond to a client's situation and protect a client's assets.

109. By virtue of the foregoing, Plaintiffs have been damaged and is entitled to recover from GAMCO an amount to be proved at the hearing of this matter representing the damages incurred as a result of the activity complained of above.

### Count III - Common Law Fraud

110. Plaintiffs repeat and reallege the allegations contained in each and every preceding paragraph as if fully set forth herein.

118.  As a direct and proximate result of the negligence and gross negligence of GAMCO, Plaintiffs suffered significant monetary loss.

119.  By virtue of the foregoing, Plaintiffs have been damaged and are entitled to recover from GAMCO an amount to be proved at the trial of this matter representing the damages incurred as a result of the activity complained of above.

## DERIVATIVE CAUSES OF ACTION

### Count V – Breach of Fiduciary Duty

**(Derivatively On Behalf of Manhattan Partners, II, L.P. and S.W.A.N. Partners, L.P. Against John Gabelli, Inc., Robin Prever, Inc., Carol A. Gabelli, Inc. and Daniel L. Lofrese, Inc.)**

120.  Derivative Plaintiff repeats and realleges the allegations contained in each and every preceding paragraph as if fully set forth herein.

121.  Derivative Plaintiff brings this count for breach of fiduciary duty derivatively on behalf of the Feeder Funds against the Derivative Defendants.

122.  The duties assumed by the Derivative Defendants and owed to the limited partnership include, among other things:

    a.  The duty to perform adequate due diligence and investigation of BMIS.

    b.  The duty to act with reasonable care to ascertain that the information set forth in the written materials, including the Monthly Account Statements, and other presentations communicated to and relied upon by limited partners was accurate and did not contain misleading statements or omissions of material facts.

    c.  The duty to deal fairly and honestly with the limited partnership.

- (d) punitive damages to punish Derivative Defendants for their willful misconduct and flagrant violations of their obligations to the Feeder Funds and their Limited Partners, so as to set an example and to deter such behavior in the future;

- (e) the costs of litigation, including reasonable consulting and representation fees, expert witness fees and any other costs deemed reasonable; and

- (f) any other damages or other relief deemed just and proper.

Dated: June 23, 2010                           LOWEY DANNENBERG COHEN & HART, P.C.

By: _____
Peter D. St. Phillip, Jr.
Thomas M. Skelton
Scott V. Papp
One North Broadway, Suite 509
White Plains, New York 10601
Telephone:  (914) 997-0500
Facsimile:  (914) 997-0035